Good morning, Your Honors. May it please the Court. I'm going to try, if I may, to reserve a couple of minutes for rebuttal, if I can. Okay. This particular case focuses on whether a governmental or quasi-governmental entity can enjoy Eleventh Amendment immunity after it has already been judicially established under the same facts and under the same functions in state court proceedings that that entity is independent of the State of California and acting in a proprietary function. In this particular instance, the entity that we're dealing with is the Regents of the University of California, which the majority of the decisions in the Ninth Circuit have held is an arm of the State of California and enjoys Eleventh Amendment immunity. We're bound by our own decisions. Right. Are you aware of that? I'm aware of that, yes. Now, under the prevailing authority cited on the brief, it says that each claim of Eleventh Amendment immunity must be examined independently in the context of the claim brought by the plaintiff. And in this particular instance, we have, I think, a rather clear decision from the California Court of Appeal, upheld by the California Supreme Court in this case, when they denied cert, that the State of the Regents, with regard to the administration of its retirement benefits, is independent of the State of California. In other words, it's acting in a proprietary manner and that the State of California laws do not apply to the Regents under this particular function, as cited in the brief and as cited in the excerpts of record. In this particular instance, Dr. Fiad worked, for example's sake, let's say 15 years for the State of California. The State of California has a retirement program and a person qualifies for retirement based on every year of employment with the State of California. But in this instance, the Regents said, you don't work for the State of California when you work with Regents, so you don't get to qualify for retirement benefits for your time with Regents. PERS, yes. I don't get it. I mean, we've got this case, Doe v. Lawrence Livermore Lab, where the Supreme Court had reversed us, where we said the university was not an arm of the State and then we held after the reversal. The university is an arm of the State of California under the test of, and then we cite a case, university is immune from suit in federal court by reason of the 11th Amendment. My thought is it really doesn't matter whether Doe v. Lawrence Livermore is right or wrong. It's authority of the Ninth Circuit. We're the Ninth Circuit. We're bound by it. Is there anywhere to go from there? Well, I think so. Let me get the case. On page 24 of the brief, I cite Otero v. Purcell, which states that even if a prior pronouncement existed, however, it would not necessarily be determinative since the court must consider each claim of sovereign immunity in the context of the particular claim brought by the plaintiff. In other words, the authority cited by the court and the authorities I reviewed, I believe, unless I'm mistaken, don't hold a blanket status as to the reasons for the University of California. It's a district court case, and you didn't mention the context there. Of course, there are situations where some individual variation can affect things. Correct. And this, I think, is about as absolutely clear of an example of one of those administrative functions that's proprietary, and I could explain quite clearly why it is proprietary. And it's already been established through judicial, through decisions from the California Court of Appeal, that with this function, under the facts of this case, Regents is entirely independent of the State of California. One example already cited here is, as I said, for the 15 years of employment with the State of California, for Dr. Fiat, if Regents was the State of California, then he qualifies for a return. Give me an example of what you consider to be the State of California. You say the university system is not a part of the State of California. Give me another example. The University of California. How about the highway department? Yes, yes. It's an arm or it isn't an arm. It is, and it is PERS, as a matter of fact. How about the – give me an example of one that is not. Every single employment position, whether it's with the San Jose State University, the California Highway Patrol, Caltrans, what have you, is a California employment position that falls under the public retirement system. Education is not as important as highway maintenance. No, no. Education falls under the public retirement system. It does, under PERS. And that's the whole point. Education falls – and, in fact, for the years of service Dr. Fiat performed for San Jose State University, education, he did get retirement benefits. He does have retirement benefits because he worked for the State of California or an arm of the State of California. It's only for those years with the Regents of the University of California that they denied him benefits. And they denied him benefits saying, basically, you don't work for the State of California. You work for us, Regents. We're not the State of California, and we don't have to pay you retirement benefits for the years of service with Regents. And you knew this as far back as 1996, your client did. That's when the denial took place. Oh, yes. And what's the statute of limitation on this claim? No statute of limitations. Government Code Section 20164 says if it's the State of California, there is no statute of limitations. Now, here's the interesting thing about this. Here we have 11th Amendment being extended to the Regents of the University of California. That could only be done if the Regents is an arm of the State of California. The Government Code Section 20164 applies to the retirement program for the State of California, but it's even more precise than that. There's a Government Code Section 20353 that says, in addition, if there's a reciprocity agreement between the two entities, between Regents and PERS, or between Regents and State of California, it statutorily extends the California Government Code sections to that entity, in other words, to Regents. So we have it statutorily as well. I'm not clear on how 20164, even if your interpretation was correct up to that point, eliminates the statute of limitations. Which one should I be looking at there? Sure. I'm looking at my time clock here. I was hoping to reserve a couple of minutes, but let me run right to it. It looks to me as though it just tells when the statute of limitations commences in subsection 3, and the thing about the obligation continuing for life means the obligation to pay retirement, not the statute of limitations on actions. You're talking about 201642 that says, in cases where the system owes money to a member or beneficiary, the period of limitations shall not apply? Yes, there we go. Oh, I see. What page was that? That's on the brief. And the California Court of Appeal rejected this interpretation. It says applies only to claims against PERS based on errors or omissions. The California Court of Appeal did something quite interesting. They basically came down with a decision that if the error or omission were intentional and not inadvertent, then there is a statute of limitations. But if it's inadvertent, if it's an error, then there is no statute of limitations. And the problem there, of course, is that nobody knows if it's an error or not. This is what the whole lawsuit process is about. Well, they said here this was a result of a measured, deliberate decision-making process. The refusal to pay interest or capitalization cannot be characterized as either an error or an omission. So we have a definitive statement from the California Court of Appeal that the section that you rely on doesn't apply. And our claim, of course, challenges that interpretation by the California Court of Appeal on constitutional grounds because, for example, in this instance, PERS withheld benefits for a period of 12 years. That was clearly the result of a measured and deliberate process. They went through an administrative review and they made a decision. Exactly as the Court of Appeal stated, measured and deliberated, but they found it was a mistake 12 years later. If you're right, the clock starts to run against you in 1996 and the one-year limitation period expires. Three-year limitation period expires before you claim entitlement to a two-year limitation period. So the new two-limitation period that came online in 2003 doesn't apply either. I mean, it seems you're time-barred. No, I guess I didn't follow the court on that. The government code section 20164 says there's no period of limitation. No. No? The California Court of Appeal says no, not me. Oh, I know that. And that's part of our challenge. Part of Dr. Fayette's challenge on the complaint is that the California Supreme – California Court of Appeal's interpretation of government code section 20164 is an unconstitutional interpretation. A statute of limitation is not unconstitutional because it deprives you of your ability to pursue property. Well, in this particular instance, Dr. Fayette presented a claim that under the Fifth Amendment to the United States Constitution, the government can't take the property without just compensation. And there's a statute, in fact, that says there's no statute of limitations. But in this particular instance, that the governmental action as a whole is depriving him of his Fifth Amendment rights, depriving him of his property, and applying a statute of limitations that really doesn't exist. We've gone way over time. Yes, we have. If colleagues have more questions. Thank you, counsel. May it please the Court. Eric Behrens on behalf of Respondent Lee Regents of the University of California. This case really is about the running of the statute of limitations. It's about a decision that was made almost 30 years ago to deny benefits to Mr. Fayette. And no matter how he tries to bootstrap various subsequent actions into this, the time is long run. The district court granted the Regents' motion to dismiss on the basis that under Section 1983, even if you take the case back to 1996, more than two years had run. The district court also granted the Regents' motion to dismiss on the grounds that the Eleventh Amendment immunity applied and barred any action against the Regents in this case. And as Judge Kleinfeld has pointed out, there's ample Ninth Circuit precedent to justify that decision. I would be glad to answer any questions that the Court has, but it seems like this is a very straightforward ruling that should be affirmed. How come you filed your motion to submit on the brief so late? Well — You hope you're not going to charge your client for that. Well, I'm employed by the Regents. I will not charge them. You what? I am employed by the Regents. I'm in-house counsel. So I will not charge them specifically. It's almost the same with everybody when you do something like that. Judge Ferguson's right. It's almost unheard of that we would grant a continuance under those circumstances, especially when we don't know what the other side has to say about it. That's — I apologize. I agree with that. It's just, as I was preparing for argument, it did seem like — Well, remember, it caused us to go running all over the place last night to try to tell you no because it was too late and we had no idea what the other side wanted to do. I appreciate that. Okay. Thank you, counsel. Thank you. Bi-Ed versus Regents is submitted. We'll hear Dela Torre versus County of Fresno. Thank you.
judges: Ferguson, Trott, Kleinfeld